**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION**

ARTHUR E. BURNEY, JR., *Beneficiary*                                    PLAINTIFF

v.                                            CIVIL ACTION NO. 1:23-cv-283-TBM-RPM

ALLEN AUTOMOTIVE, INC. *et al.*                                    DEFENDANTS

<u>**ORDER AND MEMORANDUM OPINION**</u>

This matter arises out of a Retail Installment Sales Contract for the purchase and finance of a 2018 Toyota Sequoia from Allen Automotive, Inc., in Gulfport, Mississippi. Arthur E. Burney Jr. filed his *pro se* Amended Complaint [3] on November 15, 2023, asserting claims arising out of the allegedly improper securitization of his auto loan and the Defendants' resulting attempts to collect the debt. Burney specifically alleges violations of the Fair Debt Collection Practices Act ("FDCPA"), Fair Credit Extension Uniformity Act ("FCEAU"), and the Racketeer Influenced and Corrupt Organizations Act ("RICO"). Burney also asserts common-law claims for unjust enrichment, intentional infliction of emotional distress and negligent infliction of emotional distress.

Now before the Court is Defendant RBC Capital's Motion to Dismiss [15] for lack of personal jurisdiction, and in the alternative for failure to state a claim; Defendant SMBC Nikko's Motion to Dismiss [35] for lack of personal jurisdiction, and in the alternative for failure to state a claim; and Defendants' Toyota Auto Finance Receivables LLC, Toyota Auto Receivables, Toyota Motor Credit Corporation, U.S. Bank National Association, Toyota Auto Receivables 2019-D Owner Trust, and Allen Automotive, Inc.'s Motion to Dismiss [8] for failure to state a claim.[1] For

---

[1] Defendant Allen Automotive, Inc., joined [13] in the Motion to Dismiss [8] and adopts and incorporates by the arguments made.

the reasons fully discussed below, RBC Capital's Motion to Dismiss [15] and SMBC Nikko's Motion to Dismiss [35] are granted and Burney's claims against them are dismissed without prejudice for lack of personal jurisdiction. The Court also grants Toyota Auto Finance Receivables LLC, Toyota Auto Receivables, Toyota Motor Credit Corporation, U.S. Bank National Association, Toyota Auto Receivables 2019-D Owner Trust, and Allen Automotive, Inc.'s Motion to Dismiss [8] because Burney fails to state a plausible claim for relief based on his unlawful "Auto Loan Securitization" theory.

## I. BACKGROUND

Arthur E. Burney purchased a 2018 Toyota Sequoia from Allen Automotive, Inc., in Gulfport, Mississippi, and received financing from Toyota Motor Credit Corporation.[2] Burney asserts that after the loan was originated, Toyota Motor Credit Corporation sold the contract to Toyota Auto Receivables LLC, who then created the Toyota Auto Receivables 2019-D Owner Trust ("Toyota Trust") and deposited the loan. Burney alleges that the Toyota Trust then securitized and transferred the security certificates back to Toyota Receivables.[3] Finally, Burney alleges that Toyota Receivables sold the security certificates to Barclay, RBC Capital, and SMBC

---

[2] Pursuant to the terms of the financing agreement, Burney was required to make 84 monthly payments in the amount of $1,125.87 at a 7.24% interest rate.

[3] "Securitization is the process whereby mortgage loans are turned into securities, or bonds, and sold to investors. . . . The alleged purpose of securitization is to provide a large supply of money to lenders for originating loans and to provide investments to bond holders which were expected to be relatively safe." *Donna Holcomb, et al. v. Specialized Loan Servicing, LLC, et al.*, No. 3:21-cv-210, 2024 WL 4124698, at *3 (S.D. Tex. Sep. 9, 2024) (citation omitted); *see also Staten v. GE Money Bank, FSB*, No. cv H-12-3406, 2014 WL 11697161, at *7 (S.D. Tex. May 13, 2014), *report and recommendation adopted sub nom. Staten v. Lex Special Assets, L.L.C.*, No. 4:12-cv-3406, 2014 WL 11697219 (S.D. Tex. Jun. 26, 2014), *aff'd*, 601 F. App'x 340 (5th Cir. 2015).

Nikko & Anz Bank. [3], p. 2.[4] According to Burney, since at least "September 20, 2018, the Defendants have engaged in a scheme . . . to collect the amounts allegedly due to them which are not legally due to them." [3], p. 2. Burney claims that since the loan became securitized, Allen Automotive Inc., lost the ability to collect on the underlying debt.

Following the Defendants' allegedly improper attempts to collect the debt, resulting from the securitization of the loan, Burney filed suit in this Court on October 25, 2023. After Burney filed his Amended Complaint [3] as a matter of course on November 15, 2023, RBC Capital and SMBC Nikko subsequently moved to dismiss the claims asserted against them for lack of personal jurisdiction. And Toyota Auto Finance Receivables LLC, Toyota Auto Receivables, Toyota Motor Credit Corporation, U.S. Bank National Association, Toyota Auto Receivables 2019-D Owner Trust, and Allen Automotive, Inc., moved to dismiss Burney's Amended Complaint for failure to state a claim. The Court will consider each Motion in turn.

## II. PERSONAL JURISDICTION

Defendants RBC Capital and SMBC Nikko filed their respective Motions to Dismiss [15], [35] for lack of personal jurisdiction under Rule 12(b)(2) of the Federal Rules of Civil Procedure. "Personal jurisdiction over a non-resident defendant in a federal question case is determined by reference to the law of the state in which the court sits, unless otherwise provided by federal law." *Gardner v. Clark*, 101 F. Supp. 2d 468, 474 (N.D. Miss. 2000); *see Cycles, Ltd. v. W.J. Digby, Inc.*, 889 F.2d 612, 616 (5th Cir. 1989).

---

[4] This Court entered an Order to Show Cause [61] on August 20, 2024, ordering Burney to show cause, in writing, by September 3, 2024, why Defendants Barclay and Anz Bank should not be dismissed for failure to timely serve process under Rule 4(m) of the Federal Rules of Civil Procedure. As of the date of this filing, Burney has failed to respond to the Order to Show Cause. As a result, the Court finds that dismissal of Burney's claims against Barclay and Anz Bank is appropriate.

The extent of federal jurisdiction over a non-resident defendant is determined by a two-step inquiry: (1) the defendant must be amenable to service of process under the forum state's jurisdictional long-arm statute, and (2) the exercise of jurisdiction under the state statute must comport with the dictates of the due process clause of the Fourteenth Amendment. *Omni Cap. Int'l v. Rudolf Wolff & Co.*, 484 U.S. 97, 104-05, 108 S. Ct. 404, 409-10, 98 L. Ed. 2d 415 (1987). Unlike in other states, "the Mississippi long-arm statute is not coextensive with federal due process, requiring an analysis of the scope of the reach of the statute itself." *Allred v. Moore & Peterson*, 117 F.3d 278, 282 (5th Cir. 1997) (citation omitted). "Plaintiffs bear the burden of proving the district court's personal jurisdiction, but relevant factual disputes will be resolved in plaintiffs' favor." *Fielding v. Hubert Burda Media, Inc.*, 415 F.3d 419, 424 (5th Cir. 2005) (citing *Revell v. Lidov*, 317 F.3d 467, 469 (5th Cir. 2002)). Accordingly, this Court must determine whether Burney has presented sufficient evidence to support that jurisdiction is proper in this Court. *See Diece-Lisa Indus. v. Disney Enters.*, 943 F.3d 239, 249 (5th Cir. 2019). The Court finds that he has not because even if RBC Capital and SMBC Nikko were amenable to suit under Mississippi's long-arm statute, there is no constitutional basis for personal jurisdiction over these Defendants.

## A. Mississippi's Long-Arm Statute

The Mississippi long-arm statute provides, in relevant part:

> Any nonresident person, firm, general or limited partnership, or any foreign or other corporation not qualified under the Constitution and laws of this state as to doing business herein, who shall make a contract with a resident of this state to be performed in whole or in part by any party in this state, or who shall commit a tort in whole or in part in this state against a resident or nonresident of this state, or who shall do any business or perform any character of work or service in this state, shall by such act or acts be deemed to be doing business in Mississippi and shall thereby be subjected to the jurisdiction of the courts of this state.

MISS. CODE ANN. § 13-3-57. The Mississippi Supreme Court has observed that the long-arm statute applies only when there is a "nonresident corporation . . . [that] is not a corporation qualified to do business in this state" that falls under the contract, tort, or "doing business" prong of the statute. *Est. of Jones v. Phillips ex rel. Phillips*, 992 So. 2d 1131, 1138 (Miss. 2008) (quoting *Sorrells v. R & R Custom Coach Works, Inc.*, 636 So. 2d 668, 671 (Miss. 1994); *Fitch v. Wine Express Inc.*, 297 So. 3d 224, 228 (Miss. 2020) (explaining that there are three prongs to the Mississippi long-arm statute: contract, tort, and "doing-business"); MISS. CODE ANN. § 13-3-57.

Burney asserts that RBC Capital and SMBC Nikko are subject to jurisdiction in Mississippi. [20], p. 2; [44], p. 2. Assuming, without deciding, that Burney has made a *prima facie* showing that RBC Capital and SMBC Nikko are amenable to jurisdiction under the Mississippi long-arm statute, the Court nevertheless finds that exercising personal jurisdiction over RBC Capital and SMBC Nikko would not comport with the limits imposed by the Due Process Clause of the Fourteenth Amendment. *Trustmark Nat. Bank v. Sevier County Bank*, No. 3:13-cv-527-HSO, 2014 WL 4816154, at *3 (S.D. Miss. 2014) (assuming Tennessee bank was amenable to suit under the long arm statute but finding no constitutional basis for personal jurisdiction); s*ee also Wilmington Tr., N.A. v. Lincoln Benefit Life Co.*, 328 F. Supp. 3d 586, 589 (N.D. Miss. 2018) (discussing first the federal due process prong).

## B. Due process

"The Due Process Clause of the Fourteenth Amendment constrains a State's authority to bind a nonresident defendant to a judgment of its courts." *Walden v. Fiore*, 571 U.S. 277, 283, 134 S. Ct. 1115, 1121, 188 L. Ed. 2d 12 (2014) (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291, 100 S. Ct. 559, 564, 62 L. Ed. 2d 490 (1980)). The Fifth Circuit has held that jurisdiction can be exercised when: (1) the defendant has purposefully availed himself of the benefits and

protections of the forum state by establishing "minimum contacts" with the forum state; and (2) the exercise of jurisdiction over the defendant does not offend "traditional notions of fair play and substantial justice." *Mink v. AAAA Dev., LLC*, 190 F.3d 333, 336 (5th Cir. 1999) (citation omitted).

"Where a defendant has 'continuous and systematic general business contacts' with the forum state, . . . the court may exercise 'general' jurisdiction over any action brought against that defendant." *Luv N' care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006) (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 41[6], 104 S. Ct. 1868, 1873, 80 L. Ed. 2d 404 (1984)). But when "contacts are less pervasive, the court may still exercise 'specific jurisdiction' in a suit arising out of or related to the defendant's contacts with the forum." *Id.* Ultimately, the defendant's conduct must be so connected with the forum State, "such that he should reasonably anticipate being haled into court there." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474, 105 S. Ct. 2174, 2183, 85 L. Ed. 2d 528 (1985) (quoting *World-Wide Volkswagen*, 444 U.S. at 297).

Based on Burney's Amended Complaint and his pleadings, he appears to argue only that the Court has specific jurisdiction over RBC Capital and SMBC Nikko. *See* [20], p. 1; [43], p. 1. Because RBC Capital Markets and SMBC Nikko do not have the requisite minimum contacts with the State of Mississippi, this Court "need not inquire into fairness." *See McFadin v. Gerber*, 587 F.3d 753, 761 (5th Cir. 2009). Accordingly, the Court's analysis focuses only on the "minimum contacts" required by the Due Process Clause to assert specific jurisdiction over non-resident defendants.

"Due process requires that a defendant be haled into a court in a forum State based on his own affiliation with the State, not based on the 'random, fortuitous, or attenuated' contacts he

6

makes by interacting with other persons affiliated with the State." *Walden*, 571 U.S. at 286 (citing *Burger King*, 471 U.S. at 475). "This requirement can be satisfied by a showing that the defendant purposely directed its activities toward the forum state or purposely availed itself of the privileges of conducting activities there." *ITL Intern., Inc. v. Constenla, S.A.*, 669 F.3d 493, 498 (5th Cir. 2012) (citation omitted). Indeed, jurisdiction relies on the "relationship among the defendant, the forum, and the litigation," not the actions of the plaintiff or third parties. *Walden*, 571 U.S. at 291 (quoting *Calder v. Jones*, 465 U.S. 783, 788, 104 S. Ct. 1482, 1486, 79 L. Ed. 2d 804 (1984)). Pursuant to the requirements of the Due Process Clause, Burney bears the burden to show that RBC Capital Markets and SMBC Nikko have a sufficient relationship with the State of Mississippi—rather than Burney himself—to anticipate being haled into court here. *Fielding v. Hubert Burda Media, Inc.*, 415 F.3d 419, 424 (5th Cir. 2005) ("Plaintiffs bear the burden of proving the district court's personal jurisdiction"). Upon review, the Court finds that Burney has not met his burden. Instead, Burney provides mere conclusory allegations regarding RBC Capital and SMBC Nikko's minimum contacts with the State of Mississippi, which are insufficient to show purposeful availment.

For example, Burney asserts that the Court has personal jurisdiction over RBC Capital Markets because the company is "authorized by the SEC to sell and trade 'Debt Securities' in the United States … is formed under Minnesota law with New York [as] its principal place of business for the US … [and RBC Capital] is 'not limited' to ONLY doing business in Minnesota, or New York." [20], p. 1.  In support of that claim, Burney attaches an exhibit from RBC Capital Markets' website, stating that RBC Capital is a "US registered broker-dealer." [20-1], p.1. As for his allegations against SMBC Nikko, Burney similarly argues, "[i]n my view, the facts and circumstances surrounding this case support the assertion of jurisdiction over Nikko America. I

contend that my claims arise from Nikko America's activities within this jurisdiction, and I believe there is a proper basis for the Court's exercise of jurisdiction." [43], p. 1. Burney provides no support for this assertion.

Indeed, Burney does not allege that RBC Capital or SMBC Nikko contracted with him, engaged in underwriting the security in Mississippi, have relevant employees in Mississippi, or any relevant contacts with Mississippi beyond the mere "fortuit[y]" that one of the automobile loans allegedly securitized happened to involve a Mississippi resident. *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 359, 141 S. Ct. 1017, 1025, 209 L. Ed. 2d 225 (2021) (discussing how "fortuitous" contacts with forum are insufficient for minimum contacts) (citation omitted); *see Lexington Ins. Co. v. Hotai Ins. Co., Ltd.*, 938 F.3d 874 (7th Cir. 2019) (explaining that deriving a financial benefit in a state "is not the equivalent of 'doing business in'" the state). Without more, Burney has not made "a *prima facie* showing that there were sufficient contacts by [RBC Capital or SMBC Nikko] purposefully directed at the state of Mississippi to support the exercise of specific personal jurisdiction." *Trustmark Nat. Bank*, 2014 WL 4816154, at *5.

Not only do RBC Capital Markets and SMBC Nikko not have a physical presence in Mississippi, but the underwriting services at issue also appear to have been performed outside the State of Mississippi. *Monkton Ins. Services, Ltd. v. Ritter*, 768 F.3d 429, 433 (5th Cir. 2014) (citation omitted) (explaining that "a defendant does not have minimum contacts with a state when it does not have a physical presence in the state; it did not conduct business in the state; and the contract underlying the business transaction at issue in the lawsuit was not signed in the state and did not call for performance in the state"). And while these Defendants perform underwriting services for Toyota Credit, which extends loans for automobile purchases throughout the United States,

Burney provides no evidence that they conduct business specifically in Mississippi. *See J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 886, 131 S. Ct. 2780, 2790, 180 L. Ed. 2d 765 (2011) (finding "petitioner's purposeful contacts with New Jersey, not with the United States, that alone are relevant.").

The Court is not persuaded that RBC Capital and SMBC Nikko's contacts with Mississippi demonstrate that RBC Capital and SMBC Nikko purposely availed themselves of the privilege of conducting business in Mississippi. Absent that showing, there are no minimum contacts to comport with the Due Process Clause. Therefore, the Court need not reach whether jurisdiction over RBC Capital and SMBC Nikko would be fair and reasonable. *See McFadin*, 587 F.3d at 761.

Taking Burney's factual allegations as true and resolving all conflicts between the pleaded jurisdictional facts in Burney's favor, the Court is of the view that its exercise of personal jurisdiction over RBC Capital and SMBC Nikko does not satisfy due process requirements. Thus, RBC Capital and SMBC Nikko's Motions to Dismiss will be granted, and Burney's claims against these Defendants will be dismissed without prejudice for lack of personal jurisdiction.[5]

### III. FAILURE TO STATE A CLAIM

In his Amended Complaint, Burney alleges that Toyota Auto Finance Receivables LLC, Toyota Auto Receivables, Toyota Motor Credit Corporation, U.S. Bank National Association, Toyota Auto Receivables 2019-D Owner Trust, and Allen Automotive, Inc., engaged in an illegal debt collection or securitization scheme for which he suffered damages. [3], p. 2. Burney alleges

---

[5] Even if Burney did allege that this Court had general jurisdiction over these Defendants, he "must demonstrate contacts of a more extensive quality and nature between the forum state and the defendant than those needed for specific jurisdiction." *Choice Healthcare, Inc. v. Kaiser Found. Health Plan of Colo.*, 615 F.3d 364, 368 (5th Cir. 2010). Burney failed to establish the minimum contacts necessary for specific jurisdiction, and he certainly has not alleged such "continuous and systematic" contact required for general jurisdiction. *Id.*

that "since September 20, 2018, the Defendants have engaged in a scheme whereby they issue Auto Loans to consumers and then seek to collect the amounts allegedly due to them which are not legally due to them." *Id.*

According to Burney, pursuant to "the Pooling and Servicing Agreement" (the Bloomberg Auto Loan Analysis Report), "Allen Automotive Inc[.], surrendered its right to collect on the obligation of the Auto Loan account" once his loan was securitized by Toyota Motor Credit Corporation. [3], p. 4. As a result of this securitization, Burney asserts the following claims: unjust enrichment, violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), intentional infliction of emotional distress, negligent infliction of emotional distress, and violations of the Fair Debt Collection Practices Act ("FDPCA"). But the Court finds that Burney fails to state claim for relief based on his theory that the Defendants devised a scheme to obtain money by selling debt they no longer own through the improper securitization of auto loans. Therefore, Toyota Auto Finance Receivables LLC, Toyota Auto Receivables, Toyota Motor Credit Corporation, U.S. Bank National Association, Toyota Auto Receivables 2019-D Owner Trust, and Allen Automotive, Inc.'s Motion to Dismiss [8] is granted.[6]

**A. Standard of Review**

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *Hester v. Bell-Textron, Inc.*, 11 F.4th 301, 304–305 (5th Cir. 2021). In considering a motion to dismiss for failure to state a claim, a district court must limit itself to the

---

[6] Because Allen Automotive, Inc., joined [13] in the Motion to Dismiss [8], which this Court now grants, Allen Automotive Inc.'s Motion to Compel Arbitration [11] is moot. *See In re Enron Corp. Securities, Derivative & "Erisa" Litigation*, No. H-01-cv-3624-KTD, 2003 WL 23305555, at *14 (S.D. Tex. Dec. 11, 2003) (granting motion to dismiss for failure to state a claim and finding motion to compel arbitration was moot); *In Re Mirant*, 613 F.3d 584, 589 (5th Cir. 2010) (finding that "[a] party waives arbitration by seeking a decision on the merits before attempting to arbitrate."); *Forby v. One Tech., L.P.*, 909 F. 3d 780, 784 (5th Cir. 2018) (finding defendant waived its right to arbitration after seeking "a full dismissal on the merits" because "prejudice attaches to a Rule 12(b)(6) dismissal.").

contents of the pleadings, including attachments thereto. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Hester*, 11 F.4th at 305 (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007))). The Fifth Circuit has explained the *Iqbal/Twombly* standard as follows:

> In order for a claim to be plausible at the pleading stage, the complaint need not strike the reviewing court as probably meritorious, but it must raise 'more than a sheer possibility' that the defendant has violated the law as alleged. The factual allegations must be 'enough to raise a right to relief above the speculative level.'

*Oceanic Expl. Co. v. Phillips Petroleum Co. ZOC*, 352 F. App'x 945, 950 (5th Cir. 2009) (citing *Twombly*, 550 U.S. at 570).

The Court need not "accept as true conclusory allegations or unwarranted deductions of fact." *Collins*, 224 F.3d at 498 (quoting *Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1067 (5th Cir. 1994)). That said, "[p]leadings should be construed liberally, and judgment on the pleadings is appropriate only if there are no disputed issues of fact and only questions of law remain." *Chaudhary v. Arthur J. Gallagher & Co.*, 832 F. App'x 829, 832 (5th Cir. 2020). "The issue is not whether the plaintiff[] will ultimately prevail, but whether [he is] entitled to offer evidence to support [his] claim[s]." *Cook v. City of Dallas*, 683 F. App'x 315, 318 (5th Cir. 2017) (citation omitted).

**B. Auto Loan Securitization Agreement**

Pursuant to his Amended Complaint, all of Burney's claims are based on what he identifies as an unlawful "Auto Loan Securitization" scheme. [3], p. 3. According to Burney, Allen Automotive Inc., "surrendered its right to collect" when the loan was securitized. *Id.* at p. 4. But

this theory that lenders who securitize their loans cut off their rights under the loan has been repeatedly rejected by federal courts. *See Warren v. Bank of Am., N.A.*, 566 F. App'x 379, 383 (5th Cir. 2014) ("[S]everal courts that have considered [this] theory have found it without merit or any legal basis."); *Damond v. Reedy*, No. 18-cv-647-SDD-EWD, 2018 WL 4868979, at *3 (M.D. La. Sep. 24, 2018) (same holding), *report and recommendation adopted*, No. 18-cv-647-SDD-EWD, 2018 WL 6579162 (M.D. La. Dec. 13, 2018); *Shaver v. Barrett Daffin Frappier Turner & Engel, L.L.P.*, 593 F. App'x 265, 272 (5th Cir. 2014) (collecting cases); *Taylor v. Ocwen Loan Servicing, LLC*, No. 2:12-cv-107-SA, 2014 WL 280399, at *6 (N.D. Miss. Jan. 24, 2014) (collecting cases); *Frazier v. Aegis Wholesale Corp.*, No. C-11-4850-EMC, 2011 WL 6303391, at *4 (N.D. Cal. Dec. 16, 2011) (holding that securitization of the borrower's loan had no effect on the ability to enforce or transfer); *Upperman v. Deutsche Bank Nat'l Tr. Co.*, No. 1:10-cv-149-CMH, 2010 WL 1610414, at *3 (E.D. Va. Apr. 16, 2010) (finding no authority that the mere existence of a pooling or servicing agreement or investment trust can relieve borrowers of their obligation to perform under a duly executed note); *Scott v. Bank of Am., et al.*, No. 13-987, 2013 WL 6164276, at *4 (E.D. Pa. Nov. 21, 2013) (same holding regarding credit cards), *aff'd*, 580 F. App'x 56 (3d Cir. 2014).

In his pleadings, however, Burney advances no contrary legal authority indicating that his claims may proceed "on a theory undermined entirely by these holdings." *Hauge v. Wells Fargo Bank, N.A.*, No. C11-02366-TEH, 2012 WL 1029668, at *6 (N.D. Cal. Mar. 26, 2012) (collecting cases). Accordingly, Burney fails to state, "a legally cognizable claim that is plausible." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010); *Damond*, 2018 WL 4868979, at *3 (finding that "[a]ll of Plaintiff's specifically asserted causes of action are premised on Plaintiff's position that securitization is illegal" and finding that "Plaintiff has failed to establish

(and the undersigned's independent research has not revealed) any viable basis for the premise that securitization is illegal, the undersigned finds Plaintiff has failed to state a claim."). Thus, Burney's claims for unjust enrichment, violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), intentional infliction of emotional distress, negligent infliction of emotional distress, and violations of the Fair Debt Collection Practices Act ("FDPCA") claims are dismissed with prejudice.

Having found that Burney's Amended Complaint should be dismissed with prejudice due to his reliance on an implausible legal theory, which has been repeatedly rejected by federal courts, this Court need not address each of Burney's individual claims against Toyota Auto Finance Receivables LLC, Toyota Auto Receivables, Toyota Motor Credit Corporation, U.S. Bank National Association, Toyota Auto Receivables 2019-D Owner Trust, and Allen Automotive, Inc. For completeness of the record, however, the Court will briefly discuss each claim.

## C. Unjust Enrichment

In his Amended Complaint, Burney asserts that following the securitization of the loan, the Defendants surrendered their right to collect under the loan. [3], p. 4. Burney therefore claims that "it would be inequitable for Allen Automotive, Inc. [and the other Defendants], to retain such benefits without payment of value" and requests damages for this unjust enrichment. *Id.*

A claim for unjust enrichment exists "when one party has mistakenly paid another party." *Willis v. Rehab Sols. PLLC*, 82 So. 3d 583, 588 (Miss. 2012). Unjust enrichment is an equitable remedy that applies when there is no legal contract. *Hughes v. Shipp*, 324 So. 3d 286, 290 (Miss. 2021) (internal citations omitted). It "applies in situations where no legal contract exists, and the person charged is in possession of money or property which, in good conscience and justice, he or

she should not be permitted to retain, causing him or her to remit what was received." *Willis*, 82 So. 3d at 588. But Mississippi law does not bar mere enrichments—so long as they are done within legal parameters. *Omnibank of Mantee v. United S. Bank*, 607 So. 2d 76, 92 (Miss. 1992). This is because "[t]here is nothing inherently unjust about enrichment." *Id.* "For a plaintiff to recover under this rule, the party to whom the mistaken payment was made must be left in the same position after refund as he would have been in the absence of the initial payment to him." *Montgomery v. CitiMortgage, Inc.*, 955 F. Supp. 2d 640, 656 (S.D. Miss. 2013).

The Court finds that Burney has not stated a plausible unjust enrichment claim. Even if some of the Defendants could have been enriched by the securitizing of his auto loan, he provides no authority that pooling and servicing agreements or securitizing loans are improper under the law. *See Omnibank,* 607 So. 2d at 92 ("Mississippi law accepts no value condemning pursuit of wealth, so long as it be done within legal parameters, and the law does not proscribe mere enrichments, only those objectively seen as unjust."). As a result, Burney's claim for unjust enrichment must be dismissed with prejudice. *See Seven Seas Tech., Inc. v. Infinite Comput. Solutions, Inc.*, 353 F. Supp. 3d 545, 555 (S.D. Miss. 2018).

**D. Racketeer Influenced and Corrupt Organizations Act**

According to Burney, the Defendants engaged in racketeering activity via mail fraud and bank fraud. [3], p. 6. A successful RICO claim alleges "(1) the identification of a person, who, (2) through a pattern of racketeering activity, (3) uses or invests income derived therefrom to acquire an interest in or to operate an enterprise engaged in interstate commerce, or acquires, maintains an interest in, or controls such an enterprise." *Nix v. Major League Baseball*, 62 F.4th 920, 931 (5th Cir. 2023). "'A pattern of racketeering activity consists of two or more predicate criminal acts that are

(1) related and (2) amount to or pose a threat of continued criminal activity.'" *K&F Rest. Holdings, Ltd. v. Rouse*, Civil Action No. 16-293, 2018 WL 3553422, at * 17 (M.D. La. July 24, 2018), *aff'd on other grounds*, 798 F. App'x 808 (5th Cir. 2020) (quoting *Snow Ingredients, Inc. v. SnoWizard, Inc.*, 833 F.3d 512, 523–24 (5th Cir. 2016)). "The predicate criminal acts can be violations of either state or federal law." *Id.* (citing *St. Germain v. Howard*, 556 F.3d 261, 263 (5th Cir. 2009))

The Court finds that Burney's RICO claims fail because the "alleged wrongs are not pleaded with sufficient particularity to constitute the RICO predicate act of . . . fraud" consistent with Rule 9(b). *Tel-Phonic Servs., Inc. v. TBS Int'l, Inc.*, 975 F.2d 1134, 1139 (5th Cir. 1992); *Nix*, 62 F.4th at 931. Rule 9(b) of the Federal Rules of Civil Procedure requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b). While "[w]hat constitutes particularity will necessarily differ with the facts of each case," the Fifth Circuit has held that "Rule 9(b) requires the who, what, when, where, and how to be laid out." *Benchmark Electronics, Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 714, 724 (5th Cir. 2003) (citations omitted).

In his Amended Complaint, Burney simply states—with no factual support—that the Defendants engaged in "mail fraud and bank fraud in violation of 18 USC section 1341, 1343 and 1344 to support a fraudulent scheme." [3], p. 7. Burney's fraud claims clearly fail to meet the particularity requirements necessary to satisfy Rule 9(b) because he has wholly failed to provide any facts that make relief from the alleged fraud conceivable—much less plausible. *See Gonzalez v. Bank of Am. Ins. Services, Inc.*, 454 F. App'x 295, 301 (5th Cir. 2011) (finding dismissal under Rule 9(b) appropriate where the "amended complaint contains almost no allegations about events or actions affecting [the plaintiff]."); s*ee also Herrman Holdings Ltd. v. Lucent Technologies Inc.*, 302

F.3d 552, 566 (5th Cir. 2002) ("[D]istrict court did not err in dismissing [plaintiffs'] securities fraud claim for failure to plead fraud with particularity."). Thus, dismissal for failure to comply with Rule 9(b) is warranted.[7]

## E. Intentional Infliction of Emotional Distress

A claim for intentional infliction of emotional distress requires conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Bowden v. Young*, 120 So. 3d 971, 980 (Miss. 2013). Thus, to state a claim for intentional infliction of emotional distress, a plaintiff must show that: (1) the "defendant acted willfully or wantonly towards the plaintiff by committing certain described actions; (2) the defendant's acts are ones which evoke outrage or revulsion in civilized society; (3) the acts were directed at, or intended to cause harm to, the plaintiff; (4) the plaintiff suffered severe emotional distress as a direct result of the acts of the defendant; and (5) such resulting emotional distress was foreseeable from the intentional acts of the defendant." *Pointer v. Rite Aid Headquarters Corp.*, 327 So. 3d 159, 170 (Miss. Ct. App. 2021) (internal citations omitted). As a result, "meeting the requisites of a claim for intentional infliction of emotional distress is a tall order in Mississippi." *Montgomery*, 955 F. Supp. 2d at 653 (citation omitted).

Here, Burney asserts that the allegedly improper auto loan securitization and debt collection scheme caused him "emotional distress." [3], p. 6. But in support of his claim, Burney merely claims that the Defendants' conduct was done "intentionally and in disregard for the rights

---

[7] "A dismissal for failure to state fraud with particularity as required by Rule 9(b) is a dismissal on the pleadings for failure to state a claim." *Shushany v. Allwaste, Inc.*, 992 F.2d 517, 520 (5th Cir. 1993) (affirming "the dismissal with prejudice for failure to comply with Rule 9(b).").

of the Plaintiff." *Id.* In fact, nowhere in his Amended Complaint does Burney allege that the Defendants acted wantonly and outrageously, or with a subjective intent to harm him. Thus, these allegations alone fail to show conduct by the Defendants that would permit a reasonable jury to conclude that the securitization of Burney's "loan was so outrageous and extreme in character as to be intolerable in a civilized society." *Montgomery*, 955 F. Supp. 2d at 653; *Orr v. Morgan*, 230 So. 3d 368, 376 (Miss. Ct. App. 2017) (explaining that "Mississippi's standard for a claim of intentional infliction of emotional distress is very high," and finding that even when defendants may have acted with malice, such conduct nevertheless does not rise to the level required to support a finding of intentional infliction of emotional distress); *Beauchene v. Mississippi Coll.*, 986 F. Supp. 2d 755, 765 (S.D. Miss. 2013) (dismissing intentional infliction of emotional distress claim where plaintiff "merely provides one statement, claiming, '[b]y its actions,  omissions, and extreme and outrageous conduct, [the defendant] defamed and has intentionally and negligently inflicted emotional distress upon [the plaintiff].'"). Burney's claim is therefore dismissed with prejudice for failure to state a claim.

### F. Negligent Infliction of Emotional Distress

A claim for general negligence requires allegations of a duty, a breach of that duty, causation, and injury. *Darling Ingredients Inc. v. Moore*, 337 So. 3d 214, 216 (Miss. 2022). "Under Mississippi law, a claim for negligent infliction of emotional distress requires allegations supporting a claim for general negligence in addition to allegations of some sort of injury or demonstrable harm, whether it be physical or mental, and that harm must have been reasonably foreseeable to the defendant." *Cirino v. Bank of Am., N.A.*, No. 1:14-cv-240-HSO, 2015 WL 5752105, at *7 (S.D. Miss. Aug. 16, 2015) (quoting *Am. Bankers' Ins. Co. of Fla. v. Wells*, 819 So. 2d 1196, 1208 (Miss. 2001)). So if a

complaint "fails to state a negligence claim upon which relief can be granted, it necessarily fails to state a claim for negligent infliction of emotional distress." *Watkins & Eager, PLLC v. Lawrence*, 326 So. 3d 988, 993 n. 2 (Miss. 2021) (citing *Blake v. Wilson*, 962 So. 2d 705, 715 (Miss. Ct. App. 2007)). Here, Burney does not allege sufficient facts of negligence nor does he allege he suffered an injury giving rise to a claim for negligent infliction of emotional distress.

To be sure, Burney does not allege "some sort of injury or demonstrable harm, whether it be physical or mental."[8] *Am. Bankers' Ins. Co. of Fla.*, 819 So. 2d at 1209 (requiring "some sort of physical manifestation of injury or demonstrable physical harm"). Instead, Burney alleges only that the Auto Loan Securitization scheme caused him "emotional distress." [3], p. 6. This lone allegation, however, does not "link [the plaintiff's harm] to any wrongdoings of [the defendant]." *Alston v. Mississippi Dep't of Emp. Sec.*, 300 So. 3d 543, 549 (Miss. Ct. App. 2020). Without more, Burney's claim for negligent infliction of emotional distress must therefore be dismissed with prejudice for failure to state a claim. *See Moore as next friend of Z.S. v. Clarksdale Municipal School District*, No. 4:22-cv-42-DMB, 2022 WL 17420383, at *6 (N.D. Miss. Dec. 5, 2022) (finding conclusory allegation of "severe emotional distress" was insufficient to state a claim for negligent infliction of emotional distress and dismissing plaintiff's claim); *Spann ex rel. Hopkins v. Word of Faith Christian Center Church*, 589 F. Supp. 2d 759, 772 (S.D. Miss. 2008) (finding plaintiff's allegation of depression was insufficient to sustain a claim for negligent infliction of emotional distress).

---

[8] Burney does not even discuss the elements required to state a claim for negligence, much less provide any factual support for such a claim.

**G. Fair Debt Collection Practice Act**

"To state a claim under the FDCPA, Plaintiff must show (1) that he was the object of collection activity arising from a consumer debt; (2) that Defendant is a debt collector as defined by the FDCPA; and (3) that Defendant engaged in an act or omission prohibited by the FDCPA." *Douglas v. Select Portfolio Serv., Inc.*, No. 4:14-cv-1329, 2015 WL 1064623, at *4 (S.D. Tex. Mar. 11, 2015); *Calogero v. Shows, Cali & Walsh, L.L.P.*, 970 F.3d 576, 581 (5th Cir. 2020) (citing *Douglas* as stating elements of FDCPA claim). In relevant part, the FDCPA defines a "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692(a)(6).

Although Burney asserts that he has been subject to the "defendant's improper efforts to collect relinquished debts from Plaintiff," he fails to allege facts to plausibly plead that the Defendants are debt collectors as defined by the FDCPA. [3], p. 3. Instead, Burney merely alleges that the "each of the said Defendants [were] debt collector[s] within the meaning of [the] FDCPA." [3], p. 6. But such allegations are insufficient because "the term 'debt collector' specifically refers to those who are collecting a debt *on behalf of another*. It does not apply to creditors—like [the Defendants]—who are collecting *their own debts*." *Rushing v. Exter Fin. LLC*, No. 3:22-cv-1704-G, 2022 WL 17083660, at *3 (N.D. Tex. Oct. 26, 2022), *report and recommendation adopted*, No. 3:22-cv-1704-G, 2022 WL 17084143 (N.D. Tex. Nov. 17, 2022); *see also Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208 (5th Cir. 1985) ("[A] debt collector does not include the consumer's creditors, a mortgage servicing company, or an assignee of a debt, as long as the debt was not in default at the

time it was assigned.")⁹; *Bent v. Mackie Wolfe Zientz & Mann, P.C.*, No. 3:13-cv-2038-D, 2013 WL 4551614, at *3 (N.D. Tex. Aug. 28, 2013) ("Plaintiffs' assertion that Defendant undertook the role of 'debt collector' is a legal conclusion that courts are not bound to accept as true."). Because Burney does not plausibly plead that any of the named Defendants are debt collectors as defined by the FDCPA, he fails to state a claim for relief. *See Miller v. BAC Home Loans Servicing, L.P.*, 726 F.3d 717, 722 (5th Cir. 2013) (the defendant was not a debt collector, and it was therefore not subject to the FDCPA); *Horton v. M & T Bank*, No. 4:13-cv-525-A, 2013 WL 6172145, at *9 (N.D. Tex. Nov. 22, 2013) (because "plaintiffs quoted the FDCPA definition of 'debt collector' . . . but directed the court to no facts in the second amended complaint that support an allegation that Bank Defendants fall within that definition," the court dismissed their FDCPA claims). Accordingly, Burney's FDCPA claims are dismissed with prejudice.

## D. Fair Credit Extension Uniformity Act

Finally, Burney alleges that Allen Automotive Inc., violated Pennsylvania's Fair Credit Extension Uniformity Act, 73 PA. STAT. ANN. § 2270, which prohibits unfair and deceptive acts by debt collectors and creditors "in the Commonwealth of Pennsylvania." Despite Burney's argument to the contrary, he is not a "consumer" within the meaning of Pennsylvania's Fair Credit Extension Uniformity Act because he is not a "natural person residing in [Pennsylvania]." 73 PA. STAT. ANN. § 2270. Rather, as evidenced by his signature block accompanying his pleadings filed in this matter, he resides at 13287 Hudson Krohn Rd. Biloxi, Mississippi, 39532.

Although Allen Automotive Inc., failed to move for dismissal of this claim, as a general rule, "[e]ven if a party does not make a formal motion under Rule 12(b)(6), the district judge on his or

---

⁹ Burney does not allege the debt was in default at the time of any assignment.

her own initiative may note the inadequacy of the complaint and dismiss it for failure to state a claim." 5B Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure—Civil § 1357 (3d ed. 2004); *Shawnee Intern., N.V. v. Hondo Drilling Co.*, 742 F.2d 234, 236 (5th Cir. 1984) (finding that "a district court may dismiss a complaint on its own motion for failure to state a claim" and joining the First, Third, Sixth, Seventh, and Ninth Circuits holding the same). Because Burney has not explained why Pennsylvania law applies to his auto loan and the Court finds no basis in the record supporting this claim, "the claim is patently frivolous." *See Jacquez v. Procunier*, 801 F.2d 789, 792 (5th Cir. 1986). So the Court dismisses Burney's claim that the Defendants violated Pennsylvania's Fair Credit Extension Uniformity Act *sua sponte* for failure to state a claim.

## IV. ALLEN AUTOMOTIVE, INC.'S MOTIONS FOR SANCTIONS [27], [33]

Allen Automotive Inc., moves for sanctions against Burney, arguing that Burney's Motion for Verification of Debt [21] and his pleading entitled "Defendant Attorney Questionnaire/Discovery/Disclosure" [22] are "presented for improper purpose, to harass, cause unnecessary delay, or needlessly increase the cost of litigation." [28], p. 2. "Federal Rule of Civil Procedure 11 imposes a duty on . . . pro se litigants when presenting a filing to the court to certify that the filing 'is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation.'" *Jesus v. Lamar Co.*, No. 1:22-cv-209-HSO, 2022 WL 10668709, at *8 (S.D. Miss. Oct. 18, 2022) (quoting FED. R. CIV. P. 11(b)(1)). The Court uses an objective standard of reasonableness to determine whether a party has filed a pleading for any improper purpose under Rule 11(b)(1). *Id.* (citation omitted).

Rule 11's safe-harbor provision requires a moving party to serve the motion on the party against whom it seeks sanctions 21 days before presenting the motion to the Court. FED. R. CIV. P.

11(c)(2); *In re Silica Prods. Liab. Litig.*, 398 F. Supp. 2d 563, 672 n.173 (S.D. Tex. 2005) (citing *Elliott v. Tilton*, 64 F.3d 213, 216 (5th Cir. 1995)). Failure to comply with the safe harbor provision provides sufficient basis alone to deny a motion for sanctions because the sanction cannot be upheld. *See Elliott*, 64 F.3d at 216. Because Allen Automotive Inc., says nothing about Rule 11's safe harbor provision, and does not argue that it complied with this provision, the Court denies Allen Automotive Inc.'s Motions for Sanctions [27], [33]. *See Brassfield v. Wells Fargo Bank*, No. 3:22-cv-654-KHJ, 2023 WL 3046801, at *5 (S.D. Miss. Apr. 21, 2023), *on reconsideration*, No. 3:22-cv-654-KHJ, 2023 WL 3235971 (S.D. Miss. Apr. 24, 2023).

## V. CONCLUSION

IT IS THEREFORE ORDERED AND ADJUDGED that RBC Capital's Motion to Dismiss [15] for lack of personal jurisdiction is GRANTED and Arthur E. Burney Jr.'s claims against RBC Capital are DISMISSED WITHOUT PREJUDICE.

IT IS FURTHER ORDERED AND ADJUDGED that SMBC Nikko's Motion to Dismiss [35] for lack of personal jurisdiction is GRANTED and Arthur E. Burney Jr.'s claims against SMBC Nikko are DISMISSED WITHOUT PREJUDICE.

IT IS FURTHER ORDERED AND ADJUDGED that Toyota Auto Finance Receivables LLC, Toyota Auto Receivables, Toyota Motor Credit Corporation, U.S. Bank National Association, Toyota Auto Receivables 2019-D Owner Trust, and Allen Automotive, Inc.'s Motion to Dismiss [8] for failure to state a claim is GRANTED and Arthur E. Burney Jr.'s claims asserted against them are DISMISSED WITH PREJUDICE.

IT IS FURTHER ORDERED AND ADJUDGED that Allen Automotive, Inc.'s Motion to Compel Arbitration [11] is MOOT.

IT IS FURTHER ORDERED AND ADJUDGED that Arthur E. Burney Jr.'s Motion for Verification of Debt [21] is MOOT.

IT IS FURTHER ORDERED AND ADJUDGED that Allen Automotive, Inc.'s Motion to Strike [25] is MOOT.

IT IS FURTHER ORDERED AND ADJUDGED that Allen Automotive, Inc.'s Motion for Sanctions [27] is DENIED.

IT IS FURTHER ORDERED AND ADJUDGED that Arthur E. Burney Jr.'s Motion to Cease and Desist Harassment [32] is MOOT.

IT IS FURTHER ORDERED AND ADJUDGED that Allen Automotive, Inc.'s Second Motion for Sanctions [33] is DENIED.

IT IS FURTHER ORDERED AND ADJUDGED that RBC Capital's Motion to Strike [41] is MOOT.

IT IS FURTHER ORDERED AND ADJUDGED that Arthur E. Burney Jr.'s Motion to Admit Evidence [50] is MOOT.

IT IS FURTHER ORDERED AND ADJUDGED that SMBC Nikko's Motion to Strike [54] is MOOT.

IT IS FURTHER ORDERED AND ADJUDGED that Arthur E. Burney Jr.'s claims against Barclay and Anz Bank are DISMISSED without prejudice for failure to serve process pursuant to Rule 4(m) of the Federal Rules of Civil Procedure.

This, the 26th day of September, 2024.

TAYLOR B. McNEEL
UNITED STATES DISTRICT JUDGE